REDMANN, Judge.
Plaintiffs filed a petition reciting they had entered into a contract with Otis W. Luker, Jr. and Terry J. Levy “doing business as Dynamic Industries, Inc.” The petition alleged that, although the contract recited that $10,000 was paid to plaintiffs on its execution, in fact only $3,000 was then paid, defendant having obtained a brief extension of time to pay the remaining $7,000; that neither that $7,000 nor an additional $15,000 obligation under the contract had been paid. The suit demanded $22,000 from Luker and Levy for breach of contract. Luker was alternatively sued for that amount as a guarantor of the contract.
Defendants reconvened for the $3,000 plaintiffs had received.
The trial judge dismissed both principal and reconventional demands. Plaintiffs appeal and defendants answer the appeal.
On the principal demand, we affirm dismissal because the signed document sued on was never a contract.
There was much preliminary negotiation. W. R. Peek and Robert Cantrell paid plaintiffs $3,000 for plaintiffs’ obligation for a 30-day period (1) not to negotiate with others and (2) to negotiate in good faith with Peek and Cantrell (or a corporation to be formed) for an exclusive license to manufacture and market a “gyromatic” wheel balancer on which plaintiffs held pateilts and a trade mark. During that 30 days Luker (from whom Peek had obtained the $3,000) was trying to arrange for the manufacture of the devices by one Robert Pugh. Pugh was recommended by the plaintiffs because he had been manufacturing the devices with a corporation in Ohio which allegedly became bankrupt (because of an officer’s embezzlement) .
Pugh had experienced a large number of gyromatics being returned as defective. Plaintiff Pierce insisted the unserviceableness resulted from substandard materials. Whether because of those prior defects or merely, as plaintiff Pierce insisted, because favorable tests could be used in promoting sales, Pugh would not oblige himself to manufacture the articles until certain professional testing was completed to his satisfaction.
After the expiration of the 30-day period, plaintiffs sent the proposed licensing agreement to Luker. It purported to grant *729 the license to a Louisiana corporation, for insertion of the name of which it left blank spaces both at the beginning of the contract and at the signature line. Following that blank signature line was space for the “president” to sign and the “secretary” to “attest”. Luker and Levy in fact affixed their signatures in those spaces on May 7, 1965.
On May 7 Luker also signed a letter authorizing plaintiffs to “type in the name of the corporation as Dynamic Industries, Inc.” (a name Luker testified he had reserved with the Secretary of State). The letter added “It is my understanding that all other parties will arrange a meeting as soon as possible in Jacksonville [Florida] and the other signatures will be added to this agreement. I do not think it will be necessary for me to be present at that meeting, as Mr. Peek has my complete trust and confidence. There is nothing else I can do at this time except wait for the results of this meeting.”
Luker also signed the agreement’s personal guarantee of one $15,000 payment against royalties. But Luker did not provide the $7,000 required to be paid under the terms of the agreement’s recital that $10,000 was paid on its execution. In fact plaintiffs had received only the original $3,000 and should have received the additional $7,000 on execution.
Luker entrusted the signed agreement to Peek for ultimate delivery to Pierce in Florida. Peek’s signature had to be affixed to the agreement, since Peek (with Cantrell) was a party to the original 30-day bargaining period agreement. Peek was sent by Luker to explain to Pierce that Luker could not commit himself until Pugh’s testing was completed and the manufacturing arrangements concluded, and that further time was necessary for these purposes.
By deposition admitted into evidence because Peek was out of state at trial, LSA-C.C.P. art. 1428, Peek testified he conveyed Luker’s message to Pierce, and that Pierce readily agreed that an extension of time would be allowed, “so I took them at their word, delivered the papers to them and left.”
Pierce did not sign the agreement until May 21, 1965, but by letter to “Dynamic Industries, Inc.” dated May 13, 1965, Pierce treated the agreement as binding and effective, although incorrect in reciting receipt of $10,000 since only $3,000 had been received; and “Payment of the remaining $7,000 shall be deferred for a period of 45 days from this date.” During that period, the letter recited, Dynamic would conduct tests and if unsatisfied with the results could “terminate” the agreement by giving Pierce notice. The letter also advised Dynamic that “in the event you proceed under the terms of the licensing agreement” plaintiffs would make certain future allowances against royalties for participating in the prior testing costs. The letter concluded “Please acknowledge your agreement to the terms of this letter by endorsing your signature on the copy hereof enclosed herein.”
Luker did not give the acceptances requested by that May 13 letter, either individually or for the proposed corporation.
From these circumstances we conclude that Luker did not make an unqualified offer for a contract by signing the document on May 7 and transmitting it with an agent to explain the necessity for further time before Luker could bind himself ; and Pierce understood Luker was not offering a binding contract. Pierce’s May 13 letter providing 45 days to “terminate” (and other new matters) was itself an offer or a counteroffer, which was never accepted by Luker, but which satisfies us that Pierce knew he had no simple offer he could simply accept.
Nor is any subsequent agreement to treat the “licensing agreement” as a binding contract shown by the evidence. The parties continued to attempt to make arrangements for manufacturing and to clear doubts as to the protection afforded by the *730 Pierce patents. But no arrangements were completed, and even a proposal by Luker for a meeting in the latter part of June fell through in spite of the known difficulties. On June 29 plaintiffs’ Florida counsel wrote Dynamic, attention of Luker, that the 45-day period provided by Pierce’s May 13 letter had passed without notice of termination by Luker and accordingly the contract “remained” in force and the $7,000 was due.
We conclude the proposed licensing agreement never became a contract; LSA-C.C. art. 1805.
We also affirm the rejection of the reconventional demand by Luker and Levy to recover the $3,000 paid by Peek and Cantrell for the 30-day bargaining period. Even assuming Luker and Levy succeeded to Peek and Cantrell’s rights, Peek and Cantrell got what they paid for.
The judgment appealed from is affirmed at plaintiffs’ cost.
Affirmed.